**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JOHN A. KEITH,                                         :

      Plaintiff,                                   :

vs.                                                           :        CA 16-0076-C

CAROLYN W. COLVIN,                             :
Acting Commissioner of Social Security,
                                              :

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the December 5, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to cervical degenerative disc disease by history, low back pain, and anxiety. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.**
>
> **2.    The claimant has not engaged in substantial gainful activity since September 20, 2012 (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).**
>
> .    .    .
>
> **3.    The claimant has the following severe impairments: history of cervical degenerative disc disease and low back pain (20 CFR 404.1520(c) and 416.920 (c)).**
>
> .    .    .
>
> The claimant's medically determinable mental impairments of anxiety and history of drug dependence do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore nonsevere impairments.
>
> Dr. Harrison, the claimant's primary care physician, diagnosed the claimant with anxiety. He has been prescribing the claimant Xanax for several years. He has not referred the claimant for mental health treatment and the claimant has not been seen by a psychiatrist, psychologist, counselor or other mental health specialist. The claimant has also not required inpatient psychiatric treatment. Dr. Harrison did not identify any functional limitations related to the claimant's anxiety.
>
> Lucile T. Williams, Psy.D., a psychologist, evaluated the claimant on a consultative basis in February 2013. The claimant told Dr. Williams that he had been having anxiety attacks for ten years but that he thought he was bipolar. The attacks occurred every few hours and lasted two to three hours. During an attack, he wanted to hurt stuff and he would cuss and take things out on other people. Although Dr. Williams questioned the claimant "extensively" about his alleged anxiety attacks and bipolar disorder, he did not actually endorse any symptoms of anxiety or bipolar disorder. He described his mood as generally happy and only occasionally mad, which is inconsistent with having anxiety attacks every few hours. On exam, the claimant's affect was normal and he did not appear anxious. His mood seemed euthymic. His concentration, attention, and memory were all generally intact. He was able to subtract serial 3's, count backward from 20 to 1, work problems in change making/simple arithmetic, spell "world" backward, recall 5 digits forward and 4 digits backward, and recall 3 of 3 words immediately and 2 of 3 words after five

minutes. The claimant's thought processes were also grossly intact. There were no loose associations, tangential or circumstantial thinking, he did not appear confused, conversation was normal, and there was no evidence of hallucinations, delusions, phobias, or compulsions. His insight and judgment were poor, however. Dr. Williams estimated the claimant's intelligence to be in the low average range. Dr. Williams diagnosed the claimant with Lortab and Xanax dependence. She did not identify any functional limitations related to the claimant's drug dependence or alleged anxiety or bipolar disorder but instead believed that the claimant would likely have a favorable response to treatment within the next six to twelve months. She also found that, while the claimant was cooperative, his statements appeared "questionable" and were a "naïve attempt to be seen in a worse light." The undersigned gives significant weight to the examination findings and opinion of Dr. Williams, as they are well supported and consistent with the record as a whole, including Dr. Harrison's treatment records and the absence of any formal mental health treatment.

In making this finding that the claimant does not have a severe mental impairment, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant lives with and cares for his spouse, who is disabled and on dialysis. At the hearing, the claimant testified that he lives with his spouse and stepdaughter. He spends most of the day watching television but he is able to prepare simple meals, shop, and manage his finances. He is also able to care for his personal needs, as he presented to two separate consultative evaluations appropriately dressed and groomed. The claimant testified that he was in special education classes and that he cannot read or write very well . . . but there is no evidence in the record that he has a learning or intellectual disability. Dr. Williams estimated the claimant's intelligence to be in the low average range and he previously worked in semi-skilled and skilled occupations. He told Dr. Williams that he stopped working because of his alleged physical problems, not because of any intellectual limitations. Although the claimant reported some difficulties with activities of daily living, he attributed these difficulties to his alleged physical impairments, not anxiety or any other mental impairment. Dr. Veits found that the claimant has mild limitation in activities of daily living.

The next functional area is social functioning. In this area, the claimant has mild limitation. Although Dr. Veits, who did not treat or examine the claimant, found that the claimant has moderate limitations in social functioning due to his anxiety, this is not supported by the record. The claimant did not endorse any symptoms of anxiety or bipolar disorder during the consultative evaluation with Dr. Williams. Rather, he described

his mood as generally happy and he did not appear anxious. She found that, while the claimant was cooperative, his statements appeared "questionable" and were a "naïve attempt to be seen in a worse light." Dr. Williams did not identify any functional limitations in terms of the claimant's ability to interact appropriately with others. Dr. Sherman, who also evaluated the claimant on a consultative basis, diagnosed the claimant with anxiety based on his past history, but the claimant was calm during the evaluation and he maintained good eye contact and good subject focus. There is no evidence in the record that he had any difficulties interacting appropriately with Dr. Sherman or any other provider. Moreover, which the claimant reported being more comfortable at home and generally staying to himself, he denied having any problems getting along with family, friends, or neighbors and he is able to shop in stores and go to church. He indicated at one time that he had been fired or laid off from a job because of problems getting along with others but he also reported that he had *not* been laid off or fired from a job because of problems getting along with others.

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. Dr. Veits found the claimant has moderate limitations in concentration, persistence and pace but this is also not supported by the record. The claimant reported having difficulties paying attention, following instructions, handling stress, handling changes in routine, and needing reminders to take his medication; however, there is no evidence of any cognitive deficits or deficits in concentration or attention documented in Dr. Harrison's treatment records, who has been managing the claimant's anxiety for several years. The claimant exhibited good concentration, attention and memory during the consultative evaluation with Dr. Williams. He was also able to maintain good subject focus during the consultative evaluation with Dr. Sherman. Additionally, while the claimant testified that he was in special education and cannot read or write very well, there is no evidence in the record that he has a learning or intellectual disability that would affect his ability to maintain adequate concentration and attention. Dr. Williams, for example, estimated the claimant's intelligence to be in the low average range and he was able to work in semiskilled and skilled occupations. He reportedly stopped working because of his alleged physical impairments, not because of any intellectual or cognitive limitations or deficits in maintaining concentration or attention.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

4

The undersigned has nonetheless *limited the claimant to unskilled work* to allow for some, albeit mild, symptoms of anxiety, history of drug dependence, and fatigue (as diagnosed by Dr. Harrison).

**4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.      .      .

**5.      After careful consideration of the entire record, the undersigned finds that  the claimant has the residual functional capacity to perform the full range of medium, unskilled work as defined in 20 CFR 404.1567(c) and 416.967(c).**

.      .      .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

At the hearing, the claimant testified that he has been seeing Dr. Harrison for eight or nine years for treatment of his back and degenerative bone disease. He sees Dr. Harrison every three months, most recently prior to the hearing in June 2014. Dr. Harrison prescribes Lortab and Xanax.

Since July 2010, Dr. Harrison has diagnosed the claimant with degenerative disc disease of the cervical spine, back pain, fatigue, and anxiety. His treatment records show occasional pain and tenderness over the claimant's cervical and/or lumbar spine on range of motion and tenderness to palpitation but no neurological deficits, such as gait abnormality, and no evidence of falls. Dr. Harrison did not diagnose the claimant with carpal tunnel syndrome or any other impairments related to his hands. Dr. Harrison has treated the claimant conservatively with medication. There is no evidence that he referred the claimant to an orthopedic surgeon, neurosurgeon, neurologist, or other specialist. There is also no evidence that Dr. Harrison prescribed or recommended the use of a cane.

Although there are no treatment records from Dr. Harrison after September 2012, the date of the decision on the claimant's prior applications, the claimant did not testify to any changes in his treatment regimen or to having had any physical therapy, injections, surgery, or even emergency room treatment since September 2012.  As of May 2014,

the claimant reported taking Lortab, Tramadol, and Xanax, the same medications Dr. Harrison has been prescribing since at least 2010.

Alan J. Sherman, M.D. evaluated the claimant on a consultative basis in March 2013. The claimant reported a history of chronic pain and anxiety. He complained of intermittent neck pain, back pain, bilateral knee pain, hand pain, and left elbow pain. On exam, the claimant had "mild" decreased range of motion of the cervical spine. He had normal range of motion in his shoulders although he complained of pain with range of motion. Upper extremity strength was normal. The claimant had normal musculature with no atrophy in the upper extremities or hands. He had normal fine motor movement in his hands, normal dexterity, normal grip strength, and normal range of motion in hands, wrists, and elbows. The claimant also had normal musculature of the bilateral lower extremities with normal range of motion in the ankles, knees, and hips and normal strength. The claimant had "mild" decrease in range of motion in the lumbar spine on extension and he complained of pain in his back with range of motion of the hips but lumbar range of motion was otherwise normal, straight leg raise was normal and there was no appreciable spasm. Although the claimant testified that his hands and feet swell, there was no evidence of any swelling on exam. The claimant walked with a slow stride and gait with a cane although he was able to walk from the chair to the table without the cane and without difficulty. Dr. Sherman diagnosed the claimant with chronic pain at multiple musculoskeletal sites and anxiety. According to Dr. Sherman, the claimant would likely not be able to engage in "heavy, labor-intense activities such as heavy lifting, pushing, pulling, and carrying" but that "otherwise there are few physical limitations that would preclude gainful employment."

Consistent with the examination findings and opinion of Dr. Sherman, the undersigned finds that the claimant is able to perform the full range of medium work. No additional limitations are warranted, as Dr. Sherman found only that the claimant could not perform "heavy" work. His examination findings were essentially normal other than "mild" decreased range of motion in the cervical and lumbar spine and some pain on motion. This is allowed for with the reduction in the claimant's residual functional capacity from very heavy to medium. Although the claimant presented to the consultative evaluation and the hearing with a cane, there is no evidence in the record that the cane is medically necessary. There is no mention of a cane in Dr. Harrison's treatment records and the claimant told Dr. Sherman that he purchased the cane himself. The undersigned did not include any limitations on reaching in the residual functional capacity, as the claimant had normal range of motion in his shoulders and normal strength in his upper extremities. The undersigned did not include any limitations on the use of the claimant's hands (other than those inherent in the lifting and carrying restrictions of medium work), notwithstanding the claimant's alleged carpal tunnel syndrome, as he had normal grip strength and dexterity during the

consultative evaluation and normal range of motion in his hands, wrists, and elbows.

The ability to perform medium work is also supported by Dr. Harrison's treatment records, which show only minimal abnormalities, i.e., occasional pain on cervical and lumbar range of motion and occasional tenderness over the spine. There is no evidence in his treatment records of any complaints of hand pain or other problems related to the claimant's hands during the adjudication period. Dr. Williams, the psychologist, likewise did not observe any gross or fine motor impairment during her evaluation of the claimant. The claimant's subjective complaints of disabling pain are not fully credible, as Dr. Harrison has treated the claimant conservatively, prescribing the same medications at the same dosages for several years. He has not referred the claimant to any specialists. The claimant has also not required emergency room treatment for neck or back pain. . . . Although the claimant reported some medication side effects—constipation, diarrhea, weakness, and vision problems—there is no evidence in the record that the claimant complained to Dr. Harrison of persistent medication side effects or that Dr. Harrison made any adjustments to the claimant's medication regimen. Moreover, while the claimant reportedly uses over the counter reading glasses, he has 20/20 bilateral vision without corrective lenses.

Finally, the ability to perform medium work is consistent with the claimant's activities of daily living. While the claimant reported spending his day mostly watching television, he is the sole caregiver for his disabled spouse, who is on dialysis.

The undersigned gives significant weight to the opinion of Dr. Sherman. Dr. Sherman opined that the claimant would likely not be able to engage in "heavy, labor-intense activities such as heavy lifting, pushing, pulling, and carrying" but that "otherwise there are few physical limitations that would preclude gainful employment." Other than not being able to perform heavy work, Dr. Sherman did not identify any functional limitations. This is consistent with his own examination findings, Dr. Harrison's examination findings, and the claimant's history of conservative treatment.

No treating or examining source has opined that the claimant is unable to work due to anxiety or any other mental impairment. Dr. Veits, who did not treat or examine the claimant, completed a Mental Residual Functional Capacity Assessment in which he opined that the claimant is able to understand and recall simple instructions, carry out simple tasks adequate to carry out an eight hour workday with customary breaks, and maintain concentration and attention for two hours with customary breaks. Dr. Veits further opined that the claimant is able to work with the public and coworkers in a casual capacity, accept non-threatening supervision with supportive feedback, and that demands at work should be mostly routine. While the undersigned has limited the claimant to unskilled work, which

is generally consistent with Dr. Veits' opinion, the undersigned gives less weight to the social interaction and adaption limitations provided by Dr. Veits. As a preliminary matter, the social and adaption limitations are not defined in functionally relevant terms. For example, it is not clear what Dr. Veits means by "non-threatening supervision" or "supportive feedback." In any event, these limitations are not supported by the record. Dr. Harrison, the claimant's primary care physician, diagnosed the claimant with anxiety but he did not identify any functional limitations related to his anxiety or even refer the claimant for mental health treatment. Dr. Sherman also diagnosed the claimant with anxiety but he too did not identify any functional limitations related to his anxiety. There is no evidence in the record that the claimant had any difficulties interacting appropriately with Dr. Harrison, Dr. Sherman, of Dr. Williams. Rather, he was calm during the evaluation with Dr. Sherman and he did not appear anxious during the evaluation with Dr. Williams. His concentration, attention, and memory were all generally intact, as evidenced by his performance on the mental status exam. Moreover, the claimant is able to shop in stores and go to church. He also previously worked in semiskilled and skilled occupations. He stopped working because of his alleged physical impairments, not because of any difficulties interacting with others, adapting, or maintaining concentration and attention.

.    .    .

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record, including the claimant's history of conservative treatment, consisting of routine physical exams and medication refills, the examination findings of Dr. Sherman, which showed only minimal abnormalities, the examination findings of Dr. Williams, and the dearth of mental health treatment.

**6.    The claimant is capable of performing past relevant work as an automobile washer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

.    .    .

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The claimant's past work as an automobile washer qualifies as past relevant work because it was performed during the past fifteen years, it was performed at a substantial gainful activity level, and it was performed for a long enough period of time for the claimant to learn the job. Because the claimant is able to perform the full range of medium unskilled work, he can return to his past relevant work as an automobile washer.

Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

The claimant was born on January 23, 1964 and 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. The claimant has a limited education and is able to communicate in English. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Based on a residual functional capacity for the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 203.26 and 203.19. Additionally, because the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2[,] reflect the potential occupational base for all unskilled work (SSRs 83-10 and 85-15), and the claimant is able to meet the mental demands of unskilled work, the medium occupational base is not significantly eroded due to the limitation to unskilled work. A finding of "not disabled" is therefore directed by Medical-Vocational Rule 203.26 and Rule 203.19.

> **7.     The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 19, 20, 20-22, 22, 23, 23-26, 26 & 26-27 (internal citations omitted; most emphasis in original but some added).)  The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the bases that he can perform his past relevant work as an automobile washer and, alternatively, other medium work that exists in significant numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by

---

[3]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Keith asserts three reasons why the Commissioner's decision to deny him benefits is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ erred in failing to find his anxiety to be a severe impairment and in failing to incorporate Dr. Veits noted moderate limitations in the residual functional capacity determination; (2) the ALJ's residual functional capacity assessment is not supported by substantial evidence and, instead, is based on mere conjecture; and (3) the ALJ erred in violation of *Francis v. Heckler,* 749 F.2d 1562 (11th Cir. 1985) by exclusively relying on the grids when plaintiff has nonexertional impairments that significantly limit basic work skills. The undersigned considers each assignment of error in turn.

A.    <u>**Whether Plaintiff's Anxiety is a Severe Impairment**</u>.    The plaintiff's primary argument is that the ALJ erred in failing to find his anxiety to be a severe impairment and in failing to incorporate Dr. Veits' moderate limitations into the residual functional capacity determination. For his part, the ALJ specifically determined that plaintiff's anxiety is not a severe impairment and explained at some length his rationale in reaching this conclusion. (*See* Tr. 20-22.)

The Commissioner's severity regulation requires the claimant to make a threshold showing that he has an impairment that significantly limits his physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c) & 416.921(a) (2016); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999) ("At the second step, [the claimant] must prove that []he has a severe impairment or combination of impairments."), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). Basic work activities include understanding, carrying out, and remembering

12

simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b)(3)-(6) & 416.921(b)(3)-(6). An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra,* 482 U.S. at 53, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and work experience were taken into account.").

As aforesaid, the ALJ specifically determined that Keith's anxiety is a non-severe impairment. The undersigned finds that the ALJ's determination in this regard is supported by substantial evidence. In particular, consultative examiner Dr. Lucille Williams evaluated plaintiff on February 19, 2013, and while plaintiff claimed a 10-year history of anxiety attacks and felt he was bipolar, on mental status examination his affect was normal and appropriate to content of thought and conversation, he did not appear anxious, his mood appeared euthymic,[4] and he was oriented to person, place, time and purpose. (Tr. 291-292.) In addition, his thought processes were grossly intact, with no loose associations or tangential or circumstantial thinking; he was not confused; his conversation was normal, with no ideas of reference, phobias, obsessions or compulsions being noted; he denied suicidal ideation and no hallucinations or

---

[4]   Euthymic is defined as "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." http://medical-dictionary.thefreedictionary.com/euthymic (last visited January 18, 2017 at 9:10 a.m.).

delusions were noted; and although his judgment and insight and understanding of himself were noted to be poor, his estimated intelligence was low average. (*Id.* at 292.) Finally, Williams findings indicate that plaintiff's immediate, recent and remote memory, general fund of information, and ability to interpret similarities and proverbs were either intact or normal (*see id.* ("Immediate memory: On digit span, he is able to recall 5 digits forward and 4 digits backward. He is able to recall 3 of three words immediately and 2 of three words after five minutes. Recent memory: He describes his activities on day of the evaluation as: 'I got dressed and came here.' Activities the day before the evaluation are described as: 'I ate some cereal, got dressed, drank some coffee, and watched TV.' Remote memory: He is able to correctly report the dates of his birthday, Valentine's Day, Christmas Day. General fund of information: He is able to identify Capital of Alabama, number of months in a year, and U.S. President, but not the Governor of Alabama. Similarities and Proverbs: Similarity between apple/banana 'fruit' and cat/dog 'pets.' He interprets proverbs as: (Strike while the iron is hot) 'Get it done' and (Don't cry over spilled milk) 'Don't cry because it is already done.'")), and he had no "negative" indicia with respect to concentration and attention (*id.* ("Concentration and attention: He is able to subtract serial threes from 20. He is able to count backward from 20 to 1. He is able to work problems in change-making/simple arithmetic. He is able to spell WORLD forward and backward.")). Importantly, Dr. Williams did not diagnose plaintiff with an anxiety disorder (or, for that matter, bipolar disorder); instead, Williams indicated that plaintiff's diagnoses were a dependence on Lortab and Xanax, which would likely have a favorable response to treatment within 6 to 12 months. (*Id.*) When the findings of Dr. Williams, which do not indicate any compromise of Keith's ability to interact appropriately with others and specifically demonstrate no significant problems with the plaintiff's ability to concentrate and

maintain attention, are combined with Dr. Sherman's general observations that plaintiff was "calm during interview with good eye contact and good subject focus[]" (Tr. 295) and the dearth of objective findings from Dr. Otis Harrison supportive of a diagnosis of anxiety or indicative of problems in interacting with others or maintaining concentration or attention (*see* Tr. 232-274), this Court does not hesitate in finding that substantial evidence of record supports the ALJ's finding that plaintiff's alleged anxiety is not a severe impairment.[5]

However, even assuming the ALJ erred in concluding Keith's anxiety is not a severe impairment, "that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process." *Burgin v. Commissioner of Social Security,* 420 Fed.Appx. 901, 903 (11th Cir. Mar. 30, 2011) (citation and footnote omitted)). In particular, the ALJ in this case proceeded to the fourth and fifth steps of the sequential evaluation process after determining that Keith had severe impairments of low back pain and cervical degenerative disc disease, *compare id.* n.3 ("The ALJ proceeded further in the sequential evaluation process because he determined that Burgin had a severe impairment due to his obstructive pulmonary disease.") *with id.* at 902 ("The finding of **any severe impairment**, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were

---

[5]     The above-delineated findings of Dr. Williams, along with plaintiff's specific unfiltered testimony that he was driven to the hearing by a friend (Tr. 384) and pre-hearing information that he watches television almost all day long (*see, e.g,* Tr. 146), substantially support the ALJ's rejection of the moderate limitations noted by non-examiner, Dr. Harold R. Veits (*see* Tr. 317), vis-à-vis plaintiff's abilities to maintain social functioning and concentration, persistence and pace.

not severe." (emphasis supplied)), and, indeed, "limited the claimant to unskilled work to allow for some, albeit mild, symptoms of anxiety, history of drug dependence, and fatigue (as diagnosed by Dr. Harrison)." (Tr. 22; *see also* Tr. 23 (ALJ's RFC determination that plaintiff can perform the full range of medium unskilled work).)

      **B.** **Whether the ALJ's RFC Determination is Supported by Substantial Evidence or, instead, is Based on Mere Conjecture.** Plaintiff next argues that the ALJ's RFC determination for a full range of medium work is not supported by substantial evidence but, instead, is based solely upon conjecture by the ALJ inasmuch as Dr. Sherman did not define what he meant by heavy work. (*See* Doc. 14, at 5-7.) In support of this argument, plaintiff cites to an out-of-circuit district court case, *Brennan-Kenyon v. Barnhart*, 252 F.Supp.2d 681 (N.D. Ill. 2003), for the following proposition: "[A]n ALJ may not play doctor and substitute his own opinion for that of a physician, or make judgments that are not substantiated by objective medical evidence[;] . . . ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings." *Id.* at 691. The Court disagrees with plaintiff that the manner in which the ALJ reached his RFC determination is tantamount to playing doctor and substituting his own independent medical findings for those of Dr. Sherman; instead, as the defendant correctly observes, the ALJ simply "carried out his regulatory role as an adjudicator responsible for assessing Mr. [Keith's] RFC." *Castle v. Colvin*, 557 Fed.Appx. 849, 853 (11th Cir. Feb. 18, 2014).[6] As the Eleventh Circuit in *Castle* recognized, *see id.* at

---

[6]    The undersigned notes that plaintiff makes no argument that the ALJ in this case ignored and failed to address relevant medical evidence (*see* Doc. 14), as was the lynchpin of the analysis in *Brennan-Kenyon, supra.* 252 F.Supp.2d at 693 ("[T]he Court finds that the ALJ erred by impermissibly playing doctor when he ignored and failed to address relevant medical evidence."); *see also id.* at 692 (citations to specific medical evidence of record that the ALJ ignored/failed to address).

853-854, and as this Court has recognized on numerous previous occasions, the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.,* 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). And in reaching his RFC determination for a full range of medium work in this case, the ALJ relied not only upon Dr. Sherman's statements that "[i]t would be unlikely the patient would be able to engage in heavy, labor-intense activities such as heavy lifting, pushing, pulling, and carrying[; o]therwise there are few physical limitations that would preclude gainful employment[]" (Tr. 296)[7] but, as well, the minimal physical findings of the consultative physician (Tr. 295 & 296; *see also* Tr. 297-299 (range of motion testing conducted by Dr. Sherman's certified nurse practitioner)) and Keith's primary care physician, Dr. Otis Harrison (Tr. 232-274),[8] and

---

[7]     The undersigned simply notes that there is nothing inherently inconsistent with the ALJ's RFC determination and the statements of Dr. Sherman. Indeed, the statements of Dr. Sherman support the ALJ's RFC determination.

[8]     While range of motion testing of the C-spine and/or L-spine by Dr. Harrison often produced some pain (*see, e.g.,* Tr. 232, 234, 236, 238, 240, 242, 244, 248, 250, 254, 256, 262, 264, 266), the treating physician consistently noted that plaintiff's general appearance was normal and/or that plaintiff was in no acute distress (*see id.*) and never changed the course of (Continued)

the claimant's lack of credibility (*see* Tr. 25), which is not challenged herein (*see* Doc. 14). The foregoing evidence relied upon by the ALJ in reaching the RFC determination constitutes substantial evidence. Stated somewhat differently, the ALJ "'provide[d] a sufficient rationale to link'" substantial record evidence to his RFC determination. *See Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)). Accordingly, plaintiff's second assignment of error fails.

C.      **Whether the ALJ Committed Reversible Error in Violation of *Francis v. Heckler*, 749 F.2d 1262 (11th Cir. 1985) by Exclusively Relying on the Grids When the Plaintiff had Non-Exertional Impairments that Significantly Limit Basis Work Skills**. The Eleventh Circuit in *Francis v. Heckler, supra,* simply recognized the well-worn legal principle that where the Commissioner concludes, at step four, that a claimant is unable to return to his past relevant work, the burden is on the Commissioner to show the existence of other work in the national economy that the claimant can perform, a

---

Keith's conservative treatment of oral medications (Lortab and Ultram or Tramadol) (Tr. 233, 235, 237, 239, 241, 243, 245, 247, 249, 253, 255, 259, 261, 263, 265 & 267).

burden that cannot be satisfied by "[e]xclusive reliance on the grids . . . *when* a claimant has non-exertional impairments that significantly limit basic work skills." 749 F.2d at 1566 (citations omitted; emphasis supplied).[9] Because a vocational expert ("VE") was present at the administrative hearing and gave testimony categorizing plaintiff's prior work (*see* Tr. 389 (for instance, the VE testified that Keith's prior work as a car washer was a medium, unskilled job with an SVP of 2)) but was unable to give testimony regarding whether plaintiff could perform any past relevant work based simply upon the consultative examinations of Drs. Williams and Sherman (*see* Tr. 390), plaintiff appears to suggest that the only manner in which the ALJ could have determined him not disabled either at step four or step five was through further, unsolicited testimony from the VE (*see* Doc. 14, at 8-9). Initially, however, the undersigned notes that in making this argument, the plaintiff impermissibly attempts to shift his burden of proof at step four to establish that he cannot perform any past relevant work to the ALJ (through the VE) by conflating/confusing steps four and five (*see id.*). Of course,

---

[9]     This Court rejects any suggestion by the plaintiff that the ALJ relied upon the Grids in finding that plaintiff had the residual functional capacity to perform his past relevant work (*see* Doc. 14, at 7-8) and, thus, was not disabled at step four of the sequential evaluation process; instead, the ALJ simply concluded, at step four, that plaintiff was capable of performing the physical and mental demands of his past work as an automobile washer as generally performed (Tr. 26-27) and then, alternatively concluded, at step five, that plaintiff could perform other medium work in the national economy by exclusively relying on the Grids without assistance from a vocational expert (Tr. 27).

    In addition, the ALJ's reference in his "hypothetical" to Keith's marginal ability to read and write (*see* Tr. 389) does not constitute, as plaintiff suggests, a mental limitation/impairment (Doc. 14, at 8); instead, as the defendant correctly argues (*see* Doc. 15, at 8), a marginal ability to read and write is a vocational factor, not a mental limitation, *see* 20 CFR Part 404, Subpart P, Appendix 2 (the Medical-Vocational Guidelines' discussion of education as a vocational factor, and specific notation that since "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance."). Indeed, the two grid rules the ALJ applied in this case (*see* Tr. 27 (grid rules 203.26 and 203.19)) contemplate a limited or less education.

vocational expert testimony is not necessary in determining that a claimant can perform past relevant work, *see Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) ("[B]ecause the ALJ concluded that [plaintiff] is capable of performing her past relevant work, testimony from a vocational expert was not necessary."), and given, as aforesaid, that the ALJ in no manner applied the Grids in determining that Keith could perform his past relevant work as a car washer, the Court finds wholly without merit plaintiff's suggestion that the ALJ "failed to carry his burden to establish that Plaintiff could return to his past work as an automobile washer[]" since "the vocational expert was never questioned as to whether the Plaintiff could perform this work." (Tr. 14, at 9.) Moreover, with respect to the ALJ's "alternative" step five determination (*see* Tr. 27), this Court's discerns no error in exclusive reliance on the Grids (*see id.*) given the prior determination that plaintiff's "anxiety" is not a severe impairment; therefore, by definition, plaintiff's anxiety, as non-severe, does not significantly limit basic work skills. *See* 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("An impairment . . . is not severe if it does not significantly limit your . . . mental ability to do basic work activities."). As previously indicated, in reaching the conclusion that plaintiff's anxiety was a non-severe impairment, the ALJ properly gave no weight to the findings of Dr. Veits, a non-examiner, that plaintiff's anxiety would impose moderate difficulties in maintaining social functioning and in maintaining concentration, persistence and pace, inasmuch as the evidence of record does not support this degree of limitation. Accordingly, for the above-stated reasons, the plaintiff's third assignment of error does not persuade this Court that both the ALJ's step four determination *and* his alternative step five determination are unsupported by substantial evidence.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 20th day of January, 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**